GERALD R. PUCKETT *v*. STATE OF INDIANA.

[No. 2-574A108. Filed February 20, 1975.]

*Belle T. Choate,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *G. Philip Duckwall,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, J.—The Defendant-Appellant Gerald R. Puckett (Puckett) appeals a trial court judgment convicting him of unlawful possession of marijuana, claiming insufficient evidence.

We affirm.

## FACTS

The facts most favorable to the State are as follows:

On May 15, 1973, a search warrant for a locked foot locker was obtained by the Indianapolis Police Department as the result of a telephone conversation between Indianapolis Police Officer John Grable and a federal narcotics agent stationed in Tucson, Arizona. The foot locker was suspected of containing illegal drugs and was being sent from Tucson by air transport and REA Express (REA) addressed to a person named Bruce Street at 4520 Bellingham Terrace, Apartment #175, Indianapolis, Indiana (Puckett's address).

After being informed by the REA agents at the Weir Cook Airport that the foot locket had arrived, Officer James Bilbrey (Bilbrey) and Officer Al Simmons (Simmons) went to the REA office the next morning, May 16, where they observed the foot locker being loaded into a REA truck for delivery to the above-stated address. Simmons, dressed as a civilian, proceeded with the REA delivery agent to the designated address, while Bilbrey followed in another vehicle.

After their arrival at the apartment building, and as they were searching for Apartment #175, Puckett approached Simmons and a conversation took place as shown by the following testimony:

> PROSECUTING ATTORNEY: Alright, will you identify with whom you had this conversation?
>
> OFFICER SIMMONS: Gerald Puckett.
>
> PROSECUTING ATTORNEY: Alright, now, is that the gentleman seated down at the end of the table?
>
> OFFICER SIMMONS: Yes, sir, it is.
>
> PROSECUTING ATTORNEY: Alright, and you, of course, had this conversation with him in his presence, is that correct?
>
> OFFICER SIMMONS: Yes, sir.
>
> PROSECUTING ATTORNEY: Alright, now what did this gentleman say to you and what did you say to him?
>
> OFFICER SIMMONS: He asked if the trunk was for him and we told him we didn't know. We asked him who he

was and he said he was Bruce Street. We said yes, it was for Bruce Street. He said, "Good, I'm happy it's here. I've been waiting on it. If you follow me I'll take you up to the apartment".

PROSECUTING ATTORNEY: Alright, now where was the apartment, in relation to where you were at the time?

OFFICER SIMMONS: We were in the basement and the apartment was on the first floor.

PROSECUTING ATTORNEY: Did he take you to an apartment?

OFFICER SIMMONS: Yes, sir, he did.

PROSECUTING ATTORNEY: What apartment number was that?

OFFICER SIMMONS: 175.

PROSECUTING ATTORNEY: And what did you do when you arrived at the apartment?

OFFICER SIMMONS: Took the trunk in and placed it in the middle of the living room floor.

PROSECUTING ATTORNEY: Was the person whom you've identified as Bruce Street required to sign anything, to acknowledge receipt of the trunk?

OFFICER SIMMONS: Yes, sir, he did.

PROSECUTING ATTORNEY: Did you see him sign it?

OFFICER SIMMONS: Yes, sir, I did.

PROSECUTING ATTORNEY: What was it?

OFFICER SIMMONS: A receipt.

PROSECUTING ATTORNEY: Did you see this gentleman down here, the defendant, also known as Bruce Street, sign that "Bruce Street"?

OFFICER SIMMONS: Yes, sir, I did."

After Puckett said he was Bruce Street, had signed the receipt for the locked foot locker as Bruce Street, and the foot locker was placed at Puckett's direction in the middle of the living room floor in Apartment #175, Simmons and the REA agent departed in the REA truck.

Fifteen minutes later, Simmons and Bilbrey returned to Apartment #175 and knocked on the door. When Puckett

opened the door, they identified themselves as police officers and asked Puckett for identification. The articles of identification handed to Simmons produced the name of Gerald R. Puckett. Simmons also asked for and received Puckett's billfold. Inside was a piece of paper with a sequence of numbers on it (combination). Finding the foot locker still locked and in the original delivery position, Simmons used the combination to open the foot locker . . . and after successfully opening the foot locker with these numbers, discovered 13.6 kilos of marijuana. Puckett was then arrested and advised of his *Miranda* rights.

Puckett's testimony was he had been contacted and asked by a friend to accept a trunk for a Bruce Street, who would be in the area soon and claim it, and that he had no knowledge of the contents of the locker.

He was convicted by the trial court of unlawful possession of marijuana and sentenced to a term of not less than one year and no more than ten years.

## ISSUE

Was there sufficient evidence of Puckett's possession of the marijuana in the locked foot locker to support his conviction of unlawful possession of marijuana?

Puckett asserts that there was neither direct nor circumstantial evidence that he had knowledge of the marijuana in the foot locker.

The State replies that Puckett's knowledge may be reasonably inferred from his misrepresentations as Bruce Street and his possession of the combination to the lock.

## DECISION

CONCLUSION—It is our opinion that there is sufficient evidence with reasonable inferences therefrom to support Puckett's conviction of unlawful possession of marijuana.

The subject is constructive possession. There is no doubt Puckett had actual physical possession of the locked foot locker with the marijuana inside.[1] The question is whether he had knowledge of the contraband inside the foot locker. Puckett maintains there is no evidence or inference that he had knowledge of the damaging contents and quotes from *Greely* v. *State* (1973), 158 Ind. App. 212, 301 N.E.2d 850, that: "It is obvious that to have constructive possession one must have some knowledge that the material is present . . ."—a sound legal conclusion supported by other cases: *Thomas* v. *State* (1973), 260 Ind. 1, 291 N.E.2d 557; *Phillips* v. *State* (1974), 160 Ind. App. 647, 313 N.E.2d 101; *Weingart* v. *State* (1973), 157 Ind. App. 597, 301 N.E.2d 222; *Rutskin* v. *State* (1972), Fla. App., 260 S.2d 525.

*See also,*

28 C.J.S. DRUGS and NARCOTIC SUPP., § 204.

So our inquiry is for circumstantial evidence from which it may reasonably be inferred that Puckett had knowledge of the marijuana inside the locked foot locker. Circumstances indicating such guilty knowledge are:

1. Puckett misrepresented to Simmons and the REA agent that he was the Bruce Street named as the addressee for whom the foot locker was intended.

2. Puckett signed the delivery receipt as Bruce Street, the addressee, again not disclosing his true identity.

3. Puckett did not reveal in signing Bruce Street's name to the delivery receipt that he was doing so on behalf of Bruce Street even though a line was provided below the signature line of the consignee for such purpose.

4. Puckett's possession of the combination of the lock.

The sum of these circumstances raises sufficient inference of Puckett's guilty knowledge of the contents of the locked foot locker.

---

1. For the distinction between actual and constructive possession, see *Rose* v. *State* (1972), 258 Ind. 377, 281 N.E.2d 486, and *Corrao* v. *State* (1972), 154 Ind. App. 525, 290 N.E.2d 484.

Similar guilty knowledge was inferred in a recent case in District 3 of this court, *Corrao* v. *State* (1972), 154 Ind. App. 525, 290 N.E.2d 484. The defendant owner and the defendant driver of an automobile containing a trunk full of freshly cut marijuana were convicted of possession (constructive), and on appeal Judge Hoffman observed:

"The circumstances surrounding the arrest exude the inference that the defendants were attempting a 'midnight requisition of roadside marijuana'."

The smell of the "requisitioned roadside marijuana" inside the car provided the necessary inference that the defendant driver and the defendant owner had knowledge of the contents of the trunk. Likewise, there emanated from Puckett's conduct an aroma of guilty knowledge of the foot locker's contents sufficient to establish constructive possession.

The circumstantial evidence is therefore sufficient to support Puckett's conviction of possession of marijuana and the judgment of the trial court is affirmed.

Sullivan, P.J. and White, J., concur.